## Schroyer *v.* Wally, Appellant.

Argued April 22, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Walter P. Smart*, and with him *Horace Thomas, L. K. Porter* and *S. G. Porter*, for appellant.

*Roger Knox*, and with him *H. George May*, for appellee.

Opinion by Trexler, J., July 2, 1929:

The plaintiff, Jacob Schroyer, made a lease of his farm for oil and gas to the Indian Creek Oil and Gas Company in April, 1920, and sold to it lumber to the value of $1,791.96 which was used in the erection of a rig for drilling. Wally had a contract with the same company to do the drilling. The work stopped for lack of funds and both Schroyer and Wally had claims against the company.

Schroyer stated that Wally, in February, 1922, when the lease was about to expire, came to him and asked him to extend the lease, told him that he was going to take the well over and would see that Schroyer got his money. The lease was extended to the Indian Creek Oil & Gas Company and later Wally paid Schroyer $300 and five months later $500.

Wally denies the promise; he says he never said he

was going to take over the lease; that he was acting for the company and that the extension was granted to the company and not to him; that it is true that later after the extension had been granted to the company and funds sufficient to run the business were not forth-coming that the company turned over the lease to him on his agreement to pay Schroyer all the lumber bill in excess of $1,000, Schroyer, as he says, having agreed to take $1,000 of his bill in stock of the company. The narrative of the plaintiff, Schroyer, is corroborated by his wife and son-in-law in all respects, except as to the allegation attributed to Wally, that he was about to take over the affairs of the company. The testimony, however, is clear that the company was in financial difficulties, that both Wally and Schroyer had claims against the company and that Schroyer later was paid the sum of $800 by Wally. Schroyer's testimony that Wally said he had arranged to take over the lease is confirmed by the circumstances.

The only question raised is whether the plaintiff's testimony was sufficient to show that the defendant's engagement to pay was an original undertaking or merely a promise to pay the debt of another. The defendant, when he came to see Schroyer, was seeking a way out so that he might save himself from the loss of what was due him for sinking the well. Without an extension of the lease, there would not be a chance for him to recoup his loss. It was therefore very evident under the evidence submitted, that the jury could find that Wally was sub-serving his own interest in offering an inducement to Schroyer to make an extension of the lease, and thus, as the lower court very properly held, he brought himself within the general principle laid down in Kirby v. Kirby, 248 Pa. 117. "When the leading object of the promisor is to subserve some interest or purpose of his own, not-

withstanding the effect is to pay or discharge the debt of another, his promise is not within the statute." Our last case on the subject is Paul & Russell v. Levitties, 95 Pa. Superior Ct. 92.

The assignments of error are overruled and the judgment is affirmed.